



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 1 2005

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

|  |  |  |
|---|---|---|
| OSCAR RENDA CONTRACTING, INC., | § | |
| RUDOLPH J. RENDA, and | § | |
| JOHN C. BECK | § | |
| | § | |
| Plaintiffs. | § | CIVIL ACTION NO. |
| | § | **5 - 0 5 CV 00 2 9 - C** |
| v. | § | |
| | § | |
| THE CITY OF LUBBOCK, TEXAS | § | |
| and MARC MCDOUGAL, | § | |
| in his official capacity as Mayor for | § | |
| injunctive relief. | § | |
| | § | |
| Defendants. | § | (JURY TRIAL REQUESTED) |

### PLAINTIFFS' ORIGINAL COMPLAINT,
### REQUEST FOR DECLARATORY JUDGMENT AND REQUEST FOR
### TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Oscar Renda Contracting, Inc., and Rudolph J. Renda (collectively referred to hereinafter as "ORC"), and John C. Beck ("Beck"), the Plaintiffs in the above-entitled cause, and files this, their Original Complaint, complaining of the City of Lubbock, Texas and the Mayor of Lubbock, in his Official Capacity, as Mayor, and would show the Court as follows:

### I. PARTIES

1.      Plaintiff Rudolph J. Renda is an individual and part owner in Oscar Renda Contracting, Inc., and is a resident of Colleyville, Texas.

2.      Plaintiff Oscar Renda Contracting, Inc., is a corporation authorized and licensed to do business in the State of Texas with its principal place of business located in Roanoke, Texas.

3.      John C. Beck is an individual property taxpayer of the City of Lubbock and is a resident of the City of Lubbock, Lubbock County, Texas.

4.      Defendant the City of Lubbock (the "City") is an incorporated municipality located within the Northern District of Texas.  The Mayor of Lubbock is on the City Council and is sued, at this time, only in his Official Capacity for Injunctive Relief, for purposes of prospective injunctive relief.  Thus, there are no issues of qualified immunity or any other personal rights that inure to Mayor Marc McDougal.  The Defendants may be served with process by serving the Lubbock City Secretary, Ms. Rebecca Garza, located at 1625 13th Street, Lubbock, Texas 79457.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 42 U.S.C. § 1331, since this case is being brought for violations of Plaintiffs' rights pursuant to the Free Speech Clause and Right to Petition Clause of the First Amendment to the United States' Constitution, pursuant to 42 U.S.C. §§ 1983, and 1988.

6.      The Plaintiffs also bring a pendent state claim for violation of §252.043(d) of the Texas Local Government Code regarding the award of a public works construction contract by a municipality in Texas.

7.      This Court has personal jurisdiction over the Defendants and subject matter jurisdiction over the matters alleged in this Complaint.

8.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b) because the events giving rise to in this controversy took place in Lubbock, Lubbock County, Texas and the Defendant, the City of Lubbock is located in Lubbock, Lubbock County, Texas, all of which are located within the Northern District of Texas, Lubbock Division.

### III. STATEMENT OF FACTS

9.     ORC is a utility construction general contractor who specializes in public works projects.

10.     Rudy Renda is a shareholder/part-owner of ORC and therefore has a financial interest in ORC and ORC's profit and losses.   Hereinafter, Rudy Renda individually and ORC will collectively be referred to as "ORC."

11.     Beck is a taxpaying resident of the City of Lubbock, Lubbock County, Texas.  Under the provisions of Chapter 252 of the Texas Local Government Code, Beck is recognized as having a material interest in the public works construction contracts awarded by Lubbock, to ensure that Lubbock complies with all competitive bidding and contract award requirements applicable to Lubbock under the provisions of state and local law.

12.     ORC was the low bidder for the construction of the South Lubbock Drainage Improvements Project, Main Trunk Line (Storm Water), Bid # 001-04/VK (the "Project").

13.     ORC submitted a bid of $23,487,764.00.  The second low bidder, Utility Contractors of America, Ltd., ("UCA") submitted a bid of $25,699,455.50, an amount more than $2.2 million higher than ORC's bid.

14.     ORC learned that the City Staff[1] had some concerns regarding ORC, and would recommend that the City award the contract to UCA.  ORC requested a meeting with the City staff to address any concerns.

15.     On September 16th, 2004, Rudy Renda and other representatives of ORC met with the City Staff, which included Marsha Reed, Victor Kilman, Tom Adams and two members of the City Attorneys' Office, Richard Casner and Jeff Hartsell.

16.     During the September 16th meeting, it was expressed, by the City representatives, that the main concern the City had was that ORC was lawsuit happy and the City Staff specifically pointed to the case of *ORC v. El Paso Lower Valley Water District* (the "Water District").

17.     It was explained to the City representatives, including the attorneys from the City Attorneys' Office, that the *Water District* case involved Renda asserting a First Amendment retaliation claim and a breach of contract claim.  In the *Water District* case, the jury returned a verdict in favor of ORC.  The El Paso Court of Appeals affirmed the verdict in favor or ORC in July, 2004[2].  A copy of the El Paso Court of Appeals' opinion was given to the City representatives on September 16.

18.     During the meeting on September 16, ORC addressed any and all concerns the City staff may have had and demonstrated that ORC was in fact the lowest responsible bidder.

19.     At the conclusion of the September 16th meeting, City staff represented that they were satisfied with ORC's information, that the City Staff had no other concerns regarding ORC's contractor responsibility and that City staff would be reevaluating its

---

[1] Employees of the City of Lubbock that make an initial recommendation to the Lubbock City Council.
[2] The case has since been resolved.

recommendation to the City Council regarding contract award. Thereafter, the City Staff, by written memo and in open session of the City Council on September 28, 2004, recommended to the City Council that the contract for the Project be awarded to ORC as the lowest responsible bidder, provided ORC executed an affidavit regarding the Project.

20.     The City Council met on September 28, 2004 to award the Project. The afternoon prior to the September 28th Council meeting, the City Attorneys' Office prepared and submitted to ORC for review and subsequent execution, the affidavit requested by the City Manager's Office.

21.     The City wanted ORC's representative, as a condition of contract award, to sign the affidavit which stated that ORC was aware of the performance requirements and the contractual provisions related to the Project. It was explained to ORC that the affidavit would help alleviate the concern that ORC would sue the City, since ORC had previously sued the Lower Valley Water District. This demonstrates that the City did not like the fact that ORC had utilized the court system to vindicate its First Amendment Protections.

22.     ORC signed the affidavit. On September 28th, during the City Council meeting, the very affidavit, which was requested by the City, was then used against ORC by the City Council as a reason not to award ORC the Project.

23.     One of the City Council members went so far as to compare the affidavit, which was requested by the City, with robbing a bank, by stating: its like asking a bank robber, do you swear you will not rob any more banks. This was a clear implication that ORC and its personnel were liars and thieves, who would resort to stealing to get a

contract, all based on the fact that ORC had been involved in the El Paso litigation. This defamatory statement was made in open session.

24.     Another of the City Council members stated that, maybe "the word" has gotten out about ORC, making reference to ORC's previous litigation.

25.     On September 28, in a 4 to 3 decision, the City Council, which is the highest Policy Making Authority for the City of Lubbock, in an arbitrary and capricious manner, voted to award the Project/Contract to the second lowest bidder.

26.     On October 7, 2004, ORC submitted a written Bid Protest/Request for City Council Reconsideration to Lubbock, asking Lubbock to consider the factual information developed by the Lubbock City Staff, as highlighted in the submission, and for Lubbock to determine that ORC was the lowest responsible bidder for the Project, deserving of award of the Contract for the Project. In an effort to avoid litigation, ORC appealed to the City Council, by addressing the Council in open session, two more times. During one of the sessions, ORC specifically informed the City Council that ORC had been informed that a motivating or main factor for not awarding the Project/Contract to ORC was because of the previous El Paso litigation. The Council members did not deny this statement.

27.     ORC further advised the City Council that not awarding the Project/Contract to ORC because of the El Paso litigation was against the law. ORC's pleas to the City Council fell on deaf ears. The City Council was intransigent and on October 28, 2004 voted, again in a split vote, to keep the Project/Contract awarded to the second lowest bidder.

28.     As a direct result of the City Council's illegal acts, ORC has lost net profit revenues and has had its name and reputation tarnished.  ORC now seeks the maximum amount of damages allowed by law, which are above the minimum jurisdictional amount of this Court.

### IV.  CAUSES OF ACTION

29.     ORC's rights, as guaranteed by the Constitution of the United States, were violated by the actions of the Defendant.  ORC brings this action for violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1983, 1988.

30.     ORC's rights, pursuant to the Free Speech Clause and Right to Petition Clause of the First Amendment to the United States Constitution, were violated when the City retaliated against ORC by not awarding the Project/Contract to ORC on the basis that ORC had utilized the court system in a previous matter.  Specifically, ORC was told that the motivating reason for the "concern" the City had, which led to the decision not to award the Project/Contract to ORC was the El Paso litigation.

31.     Even after ORC informed the City Council that ORC had been advised that the main concern or motivating factor for the City Council's decision not to award the Project/Contract to ORC was the El Paso litigation and that the El Paso litigation involved a First Amendment, section 1983 claim, the City Council did not deny this statement and was adamant in its decision not to award the Project/Contract to ORC.

32.     Utilizing the court system to redress a federally protected right is activity protected by the First Amendment to the United States Constitution.

33.     ORC advised the City, through City staff and directly to the City Council that the El Paso litigation involved protected activity.

34.     The City clearly relied upon and used ORC's protected activity, the El Paso litigation, and retaliated against ORC by not awarding ORC the Project/Contract and by defaming ORC by comparing ORC to bank robbers.  Even after complaining about being referred to as a bank robber by City Councilman Martin in open session, to this day Council Martin has not apologized for, withdrawn or otherwise corrected the totally improper statement.

35.     The City retaliated against ORC because ORC engaged in federally protected activity, specifically utilizing the court system to redress violations of federally protected rights, which is a violation of federal law.  Moreover, allowing such retaliation would chill corporations, entities, and/or individuals from utilizing the court system in the future; and such violation of federal law and the resulting effect cannot be allowed.

36.     In addition, ORC's rights under the Fifth Amendment to the United States Constitution, which was made applicable to the States by the Fourteenth Amendment to the United States Constitution, were violated.  Specifically, ORC had a liberty and property interest in its good name.  Even after requesting that the City Council correct the inference that ORC were like bank robbers, the City dug in and refused to correct this perception.

37.     The City of Lubbock has a custom, practice, or policy of violating the Texas Local Government Code procurement statutes and committing retaliation for engaging in activity that is protected by the United States Constitution.  The decisions, which form the basis of this lawsuit, were made by the Highest-Ranking-Official Policy-

Making Authority of the City of Lubbock, which is the Lubbock City Council. Therefore, the decision to retaliate against ORC because of ORC had engaged in protected activity, became the policy of the City of Lubbock.

### V. REQUEST FOR DECLARATORY JUDGMENT

38.   Based on the foregoing facts recited above, Plaintiffs make this application for declaratory judgment and injunctive relief against Defendants, pursuant to the Texas Declaratory Judgment Act.  In support of this request, Plaintiffs note that Subchapter D, §252.061 of the Texas Local Government Code provides:

> If the contract is made without compliance with this chapter, it is void and the performance of the contract, including the payment of any money under the contract, may be enjoined by any property tax paying resident of the municipality.

39.   The City failed to comply with §252.043(d)(1) of Chapter 252 of the Texas Local Government Code, which mandates that the contract for the Project "... must be awarded to the lowest responsible bidder."  Additionally, Chapter 1, Article IX, Section 27 of the Charter of Lubbock requires that "[A]ll contracts for ... improvements and public works of every kind and character, ... exceeding an expenditure of the minimum dollar amount requiring competitive bids by State law shall be let on sealed competitive bids ..."  The dollar value of the amount of the contract awarded to UCA exceeds the minimum dollar amount requiring competitive bids by municipalities under the provisions of Chapter 252 of the Texas Local Government Code.

40.   Because ORC was the lowest responsible bidder for the Project, but was not awarded the contract for the Project; the City violated its City Charter and state law by awarding a contract to UCA, the second low bidder, and not to ORC.  As a result, awarding the contract awarded to UCA is invalid, illegal and void *ab initio*.

41.     The City failed to comply with the requirements of the Texas Local Government Code and the City Charter, as recited herein and Plaintiffs ask that this Court declare that the contract for the Project awarded to UCA is null and void. Specifically, ORC and Beck hereby request a declaration from this Court, under the provisions of §252.061 of the Texas Local Government Code and the Texas Declaratory Judgment Act, that the contract awarded to UCA was made without compliance with Chapter 252 of the Texas Local Government Code, that it is void and that the performance thereof, including the payment of any money by the City to UCA under the contract is enjoined.

42.     ORC requests this Court to declare that the City did not follow the statutory scheme mandated by the Texas Legislature and that the City violated its own City Charter rules governing the award of a contract for the Project. ORC further asks this Court to declare that the City violated ORC's rights pursuant to the Texas Constitution substantive due course of law provisions and is thus entitled to injunctive relief.

## VI.  REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

43.     Plaintiffs apply for a Temporary Restraining Order[3] and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, Texas Civil Practice and Remedies Code, section 65.001, et. seq., and Texas and Federal common law. It is essential that the Court immediately and temporarily restrain the Defendants from proceeding with performance of the Project; and that this Court temporarily restrain the Mayor and Lubbock from executing any paperwork for the purpose of processing,

---

[3]   Although Federal Rule of Civil Procedure 65(b) provides that a Temporary Restraining Order may be entered ex parte, Plaintiffs' Request notice and an opportunity to attend a hearing on the Termporary Restraining Order be given the City and Plaintiffs' include with this Complaint an Order Setting Hearing on the same.

permitting construction, or making any payments under or in connection with the contract awarded to UCA.

44.     Plaintiffs have pleaded proper causes of action against the Defendants. Plaintiff have shown that the City violated the contract award requirement of Texas law and the City Charter and that Plaintiffs have a probable right of prevailing on one or more of their claims or causes of actions against the City. *See* attached Affidavits of Rudolph J. Renda, attached hereto as Exhibit "1" and the Sworn Statement of Frank Renda attached to Exhibit "1" as Exhibit "A".

45.     Because of the City's wrongful actions, Plaintiffs have suffered imminent harm. The contract for the Project was awarded to the second low bidder and ORC, the lowest responsible bidder, was denied the opportunity to perform the Project and earn the net revenue profits included in its bid price. If the Project is allowed to be performed by UCA, then ORC will be permanently denied the opportunity to perform the Project. Additionally, any money paid by the City to UCA for performance of work on the Project will be an expenditure of public funds by the City, without the opportunity for such funds to be recovered from UCA. Thus, such expended public funds will be irretrievable lost to the residents of Lubbock, including Beck.

46.     The loss of the opportunity to perform the Project will be irreparable harm suffered by ORC and the loss of public funds paid to UCA under an illegal and void contract represents irreparable harm suffered by the resident taxpayers of Lubbock, including Beck. Additionally, absent the injunctive relief sought herein, there is no other available legal remedy that can give the Plaintiffs complete, final and equal relief.

47.    This Court must issue a temporary retraining order and provide preliminary injunctive relief in order to preserve the status quo, the last, actual, peaceful, non-contested status between the parties, which existed prior to the award of the contract for the Project to UCA.

48.    Plaintiffs request that this Court enter a temporary restraining order and, after a hearing, a temporary injunction, to preserve the status quo with respect to the performance and payment of the Project pending the final outcome of this lawsuit. Specifically, Plaintiffs request that the terms of the temporary restraining order and temporary injunction prohibit Defendants from performing the contract awarded to UCA, including, but not limited to taking any actions to make payment to UCA for the Project.

49.    Plaintiffs are ready, willing and able to post a bond, for the issuance of a temporary restraining order and temporary injunction, in a reasonable amount to be set by this Court.

## VII.  REQUEST FOR PERMANENT INJUNCTION

50.    Based on the facts of this case, it is clear that the City has violated Chapter 252 of the Texas Local Government Code.  This violation is a wrongful act, which irreparably harms ORC in that ORC has not been awarded a contract for the Project, even though ORC was the lowest responsible bidder.  The City's illegal decision not to award ORC the Project was made without due process accorded ORC in violation of the Constitution and Texas Statutes.  As such, this decision is an illegal and wrongful act, which irreparably harms ORC.  ORC requests that, after trial, this Court permanently enjoin the Defendants from performing any acts in furtherance of the illegally awarded

contract, including but not limited to processing or making any payments in connection with the Project.

## VIII.  DAMAGES

51.     ORC seeks any and all damages associated with the violations of its state and federally protected rights as guaranteed by the Constitution of the United States and applicable state or common law.  These damages include, but are not limited to, ORC's lost net revenue profits associated with the Project had ORC rightfully been awarded the Project/Contract as the lowest responsible bidder, as well as the damage to ORC's reputation.

52.     In addition, ORC seeks the injunctive relief requested in this pleading.

53.     ORC further seeks all reasonable and necessary attorneys' fees pursuant to the Texas Civil Practice and Remedies Code, section 37.009; 42 U.S.C. section 1988; and the Texas Declaratory Judgment Act.

54.     Plaintiffs further seeks any and all costs of court as permitted by law, pre and post judgment interest at the highest rate allowed by law and any other relief including any claim allowed for quantum meruit for the damages associated with preparing and submitting its bid.

## IX.  JURY DEMAND

55.     Plaintiffs hereby request a trial by jury.

## X.  CONCLUSION

WHEREFORE PREMISES CONSIDERED, ORC respectfully requests this Court to order the Defendants to appear and answer and that upon final hearing ORC be

awarded all the relief, which has been requested in this pleading, including but not limited to:

 a. A temporary restraining order to be issued to Defendants, restraining Defendants from performing any action in furtherance of the contract awarded to UCA, including but not limited to taking any action to process, permit construction, or make payment to UCA for the Project, until further order by this Court;

 b. A preliminary injunction to be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants from performing any action in furtherance of the contract awarded to UCA, including but not limited to taking any action to process or make payment to UCA for the Project during the pendency of this action;

 c. A permanent injunction be issued, on final trial of this cause, enjoining Defendants from performing any action in furtherance of the contract awarded to UCA, including but not limited to taking any action to process or make payment to UCA for the Project under the contract as said contract is void;

 d. Final Judgment that Lubbock defamed ORC and violated ORC's rights under applicable law; and award all compensatory damages, attorneys' fees, pre- and post-judgment interest at the highest rate allowed by law, all costs of Court;

 e. Final Judgment declaring that the contract awarded to UCA is illegal and void because it violates Texas law and the Lubbock City Charter in that the contract for the Project was not awarded to the lowest responsible bidder as required by law;

 f. That ORC be awarded all the relief requested in this Complaint including damages and attorneys fees; and

g.  That ORC be awarded any other relief, either special or general, in law or in equity, which ORC may show itself justly entitled.

Respectfully submitted,

QUILLING, SELANDER,
CUMMISKEY & LOWNDS, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas  75201
(214) 871-2100  (Telephone)
(214) 871-2111  (Facsimile)

Andrew M. Trusevich
Texas Bar No. 00785119
Terry L. Salazar
Texas Bar No. 17527500

AND

MULLIN HOARD & BROWN, L.L.P.
1500 Broadway, Suite 700
Lubbock, Texas 79401
(806) 765-7491  (Telephone)
(806) 765-0553  (Facsimile)

By: _Molly A. Manning_
        Molly A. Manning
        Texas Bar No. 24012646
        Lawrence M. Doss
        Texas Bar No. 24012544
        Donald M. Hunt
        Texas Bar No. 10284000
        David R. Langston
        Texas Bar No. 11923800

ATTORNEYS FOR PLAINTIFFS

### AFFIDAVIT OF RUDOLPH J. RENDA

STATE OF TEXAS      §
                       §
COUNTY OF DENTON    §

       BEFORE ME, the undersigned authority, on this day personally appeared Rudolph J. Renda, who upon his oath deposed and stated the following:

1.     My name is Rudolph J. Renda. I am over the age of twenty-one (21) and I am legally capable of making this Affidavit. I have personal knowledge of the facts stated in this Affidavit based on my role as a shareholder of Oscar Renda Contracting, Inc., ("ORC") and my personal involvement in this matter.

2.     I am a shareholder, which makes me part owner, in ORC. On August 3, 2004, ORC submitted a bid to the City of Lubbock for the South Lubbock Drainage Improvements Project Package #1 — Main Truck Line (Storm Water) (the "Project").

3.     When the sealed bids were opened, ORC's bid was the lowest responsible bid at $23,487,764.00. The second lowest bidder submitted a bid of $25,699,455.50, an amount more than $2.2 million higher than ORC's bid.

4.     I was informed that some members of the City Staff, who reported to the City Council, had some concerns about ORC's bid. I received a copy of a City Staff memo, which included a matrix prepared by the City Staff, pursuant to an Open Records request, on or about September 14, 2004.

Rudolph J. Renda Affidavit Page 1



5.  The information matrix, that City Staff provide, specified that ORC had sued LVWD for $4 million, in the first portion of the matrix.

6.  ORC requested a meeting with City Staff, which occurred on September 16, 2004. I personally attended the meeting with representatives of the City Staff. It was my impression that a primary concern that City Staff had was the fact that ORC had sued LVWD. After all issues identified on the matrix were discussed and resolved, the meeting ended with the City Staff representing that they did not have any other questions or concerns, regarding ORC's contractor responsibility.

7.  On September 28, 2004, the City Council, in a 4 to 3 vote, awarded the Project contract to the second lowest bidder. ORC was denied the contract. Prior to the City Council vote, the City, through the City Attorneys' Office, requested that ORC sign an affidavit that was prepared by someone connected by the City.

8.  ORC complied with the City's request and Frank Renda, an officer with ORC, signed the affidavit. A copy of the affidavit is attached as Exhibit "A."

9.  I have personally reviewed the videotape of the September 28, 2004, City Council meeting. I was astonished to find out that the very affidavit, which was prepared and requested by the City, was then used against ORC as a basis not to award the Project contract to ORC. City Staff represented to ORC that the affidavit would alleviate the concern Lubbock had that ORC would sue Lubbock, since ORC had sued LVWD.

10.   In an effort to avoid litigation, I personally went to two City Council meetings, on October 11 and October 28, and addressed the City Council during the "citizens' comments" session. I asked the City Council to reconsider its decision and told the Council that ORC would do quality work and was not there to sue the City. The Council would not change its decision.

11.   Based on my experience as a public works contractor with ORC as well as the favorable recommendation made by City Staff during the September 28, 2004 City Council Meeting, it is my opinion that ORC was the lowest responsible bidder and should have been awarded the Project contract.

12.   Since ORC was denied the Project contract, ORC has suffered and will continue to suffer financially. Specifically, ORC has lost its net profits associated with the Project. In addition, ORC's business reputation, as a responsible public works contractor has been tarnished because of wrongfully being labeled a non-responsible low bidder.

Further Affiant sayeth naught.

RUDOLPH J. RENDA

SUBSCRIBED AND SWORN TO BEFORE ME on this 22nd day of November, 2004 by Rudolph J. Renda.

Notary Public - State of Texas

LISA D. THOMPSON
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
AUGUST 23, 2006

My Commission Expires:

August 23, 2006

Rudolph J. Renda Affidavit Page 3

STATE OF TEXAS          §

COUNTY OF LUBBOCK   §

### SWORN STATEMENT

My name is Frank Renda. I am of sound mind, over 18 years of age, capable of making this Sworn Statement, and personally acquainted with the facts stated in it.  I am the $\underline{V_{ICE} \ P_{RESIDENT}}$ for Oscar Renda Contracting, Inc. ("Contractor"), and having been duly authorized by the Contractor, and Contractor having taken all necessary corporate acts and formalities to provide such authorization, make the following stipulations, representations, warranties, reaffirmations, acknowledgments and commitments.

I.

I have fully examined all documents and materials related to Invitation to Bid No. 001-04/VK ("ITB") and have personal knowledge of all the matters contained therein.  I have made, or caused to be made, or was provided an ample opportunity to make, all investigations and examinations necessary to ascertain the conditions and requirements affecting or that may affect construction of the project contemplated by the ITB.  I, and other representatives of Contractor, were provided an adequate opportunity to review subsurface soil investigations of Terra Engineers prior to Contractor providing its bid to the ITB.  Further, I understand and acknowledge that the failure to make such investigation and/or examination, or the fact that the investigation and/or examination has

EXHIBIT

A

not revealed all pertinent or relevant matters related to the South Lubbock Drainage Project contemplated by the ITB (the "Project"), will not relieve Contractor from its obligation to comply, in every detail, with all provisions and requirements of the contract documents of the ITB.

II.

I acknowledge and stipulate that I, or an authorized representative of Contractor, attended the pre-bid conference of the City of Lubbock (the "City"). Further, I acknowledge and stipulate that at said conference I, or an authorized representative of Contractor, had every opportunity to ask any questions or obtain any further information necessary to verify or clarify any questions or uncertainties Contractor may have had related to the ITB. Further, I acknowledge that Contractor received all addenda issued by the City. I further represent to the City that the on-site supervisor of Contractor shall have the authority to immediately address, in an effective manner, any public health or safety issues related to the Project.

III.

I expressly agree, stipulate and confirm to the City of Lubbock that all loss, expense or damage to the Contractor arising out of the nature of the work to be done, or from the action of the elements, or from any unforeseen circumstance or from unusual obstructions or difficulties, naturally occurring, man made or otherwise, which may be encountered in the prosecution of the Project and/or work contemplated by the ITB, shall be sustained and borne by the Contractor at its own cost and expense.

IV.

I acknowledge and stipulate that Contractor is contractually required to implement the
Storm Water Pollution Prevention measures set forth in the specifications contained
within the ITB (the "Specifications") in such a manner that will meet the requirements of
TPDES Permit No. TXR 150000 and that Contractor shall be responsible for any fines or
penalties assessed by the TCEQ for failure to so comply, as wells for all other matters set
forth in Section 01356 of the Specifications. Contractor expressly recognizes its duties to
fully perform all storm water related activities as set forth in Section 01356 of the
Specifications.

V.

The ITB, specifically including without limitation, the Specifications thereto, has been
thoroughly examined by Contractor and I represent and reaffirm to the City that to my
knowledge, the Specifications are thorough and complete and that the construction of the
Project may be constructed fully and completely according to such Specifications and
within the time required in the ITB. Further, I represent and reaffirm to the City that
Contractor shall not request any additional compensation regarding or relating to the
Project except as may be requested and/or approved by the City for changes in plans or
specifications necessary after the performance of the work contemplated by the ITB has
begun or if it is necessary to decrease or increase the quantity of work to be performed or
materials, equipment or supplies to be furnished thereunder, and in such event, Sections
23 and 24 of the General Conditions of Agreement shall control the price or

compensation for such activities. I stipulate that Contractor shall perform no such extra work prior to obtaining the authorized consent of the City.

The purpose and intent of this Statement is to affirm the contents of Contractor's bid and to reassure the City of the Contractor's due diligence in the preparation of its bid for the Project. Nothing in this Statement should be construed as an alteration, modification or amendment of the bid submitted by Contractor in response to the ITB. Further, this Statement is intended to express Contractor's clear understanding of the terms, conditions and requirements set forth in the ITB for the Project. Contractor acknowledges that this Statement shall not alter, modify or amend any of the terms, conditions or requirements of the ITB, including, but not limited to the Specifications and the General Conditions of the Agreement contained therein.



Frank Renda
Affiant


SWORN TO AND SUBSCRIBED BEFORE ME  this 28th day of September , 2004

KATHERINE EGGER
Notary Public, State of Texas
My Commission Expires
10-06-2005

Katherine Egger
Notary Public, State of Texas
My Commission Expires: _____


Richard/Oscar Renda.SwornStmt        September 27, 2004

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**5-05CV0029-C**

## I. (a) PLAINTIFFS
Oscar Renda Contracting, Inc., Rudolph J. Renda, and John C. Beck

## DEFENDANTS
The City of Lubbock, Texas and Marc McDougal, in his official capacity as Mayor for injunctive. relief.

**(b)** County of Residence of First Listed Plaintiff **Denton**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Lubbock**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
**See attached.**

Attorneys (If Known)
**See attached.**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE **2/1/05**

SIGNATURE OF ATTORNEY OF RECORD *Molly A. Manning*

**FOR OFFICE USE ONLY**

RECEIPT # **44119**   AMOUNT **150.00**   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**Counsel for Plaintiffs**

Andrew M. Trusevich
Terry L. Salazar
QUILLING, SELANDER,
CUMMISKEY & LOWNDS, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100  (Telephone)
(214) 871-2111  (Facsimile)

and

David R. Langston
Molly A. Manning
Donald M. Hunt
Lawrence M. Doss
MULLIN HOARD & BROWN, L.L.P.
1500 Broadway, Suite 700
Lubbock, Texas 79401
(806) 765-7491  (Telephone)
(806) 765-0553  (Facsimile)

**Expected Counsel for Defendants**

Grady Terrill
Robert L. Craig, Jr.
Janna Fulfer
CRAIG, TERRILL, HALE & GRANTHAM, L.L.P.
1500 Broadway, Suite 400
Lubbock, Texas 79401
(806) 744-3232 (Telephone)
(806) 744-2211 (Facsimile